UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS COLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-04601-JPH-TAB |
| ) | |
| PAUL TALBOT, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING UNOPPOSED MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff, Thomas Cole, filed this 42 U.S.C. § 1983 action alleging that the defendant was deliberately indifferent to his serious medical issue, hepatitis C ("HCV"), while he was an Indiana Department of Correction ("IDOC") inmate incarcerated at Pendleton Correctional Facility. The defendant seeks summary judgment on the basis that Mr. Cole failed to exhaust his available administrative remedies before bringing this lawsuit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). For the reasons discussed below, the defendant's motion, dkt. [31], is **granted,** and this action is dismissed.

**I. Legal Standards**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in

the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *Nat'l Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that a prisoner exhaust available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

An inmate may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* filing suit. *See id.* ("Ford's real problem . . . is timing. Section 1997e(a) says that exhaustion must precede litigation. 'No action shall be brought' until exhaustion has been completed. . . . And these rules routinely are enforced . . . by dismissing a suit that begins

2

too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending . . . .") (internal citations omitted).

As the movants, the defendants bear the burden of establishing that the administrative remedies upon which they rely were available to the plaintiff. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

## II. Facts

Because Mr. Cole has not responded to the motion for summary judgment, the Court accepts as true the following facts, which the defendant has asserted and supported with admissible evidence. *See* S.D. Ind. L. R. 56-1(f)(1)(A) ("In deciding a summary judgment motion, the court will assume that[ ] the facts as claimed and supported by admissible evidence by the movant are admitted without controversy except to the extent that[] the non-movant specifically controverts the facts . . . ."); *see also Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1137 (7th Cir. 1997) (affirming district court's grant of summary judgment where it accepted moving party's facts as true when non-moving party failed to respond under local rule). The Court still views these facts in the light most favorable to the plaintiff, but his failure to oppose summary judgment "[r]educe[s] the pool" from which facts and inferences may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

In April 2017, Mr. Cole discovered that he had HCV. Dkt. 1. He sought, but did not receive, interferon treatment, experienced "downgraded, delayed and or denied medical treatment" and suffered pain and scarring to his liver. *Id.* In its Screening Entry, the Court determined that Mr. Cole's deliberate indifference claim against Dr. Talbot could proceed. Dkt. 21 at 3. The Screening Entry does not discuss the issues of exhaustion and Mr. Cole does not allege in his complaint that he attempted to exhaust his administrative remedies. Dkt. 1.

The IDOC Policy and Administrative Procedure 00-02-301, Offender Grievance Process ("OGP"), governs the inmate grievance steps "to provide a process where offenders committed to the Indiana Department of Correction may resolve concerns and complaints relating to their conditions of confinement." Dkt. 33-1 at 1. The IDOC recognizes only one grievance process. *Id.* at 3. Inmates must take the following steps to complete the OGP: (1) the inmate must attempt to resolve the complaint informally and provide evidence, (2) if the issue was unable to be resolved informally, the inmate shall submit a formal grievance on State Form 45471 no later than 10 business days from the date of the incident, (3) if the grievance is not resolved to the inmate's satisfaction, the inmate shall be permitted to file an appeal to the Warden or his designee, and (4) if the inmate is still dissatisfied with the appeal response, he may appeal to the Department Offender Grievance Manager. *Id.* at 8–12. Inmates, including Mr. Cole, are provided with information regarding the OGP "in Admission & Orientation . . . paperwork provided to inmates upon their arrival at the Pendleton Correctional Facility." Dkt. 32 at 2. This information is additionally included in Facility Directive WVC 99-07, General Operation Rules/Handbook which is made available in the facility's law library. *Id.*

IDOC records show that Mr. Cole has filed several grievances over the years. Some of these grievances were filed before the alleged onset of HCV in 2017 and others after that

timeframe. Dkt. 33-2 at 1–14. The defendant argues that "[n]one of these records indicate the Plaintiff has successfully filed any grievance regarding any of the allegations in his complaint[.]" Dkt. 32 at 2. The defendant further argues that Mr. Cole's grievance history indicates that he did not file "any grievances regarding the treatment of Hepatitis C during his entire time incarcerated at Pendleton Correctional Facility." *Id.* at 3.

But some IDOC documents include references to HCV. There is a poorly scanned partial copy of an offender grievance with Mr. Cole's name, dated May 30, 2018, with a date of incident listed as May 22, 2017. Dkt. 33-2 at 17. This document references that Mr. Cole had HCV, stated he was being refused treatment, and stated he did not have the money to get the treatment "on the streets." *Id.* At the top of this page is a return of grievance completed by J. Schuman; this form is dated May 22, 2018 and indicates the grievance was received and responded to on June 4, 2018. *Id.* This form is also difficult to read but indicates that the grievance was returned because there was no indication that an attempt at informal resolution occurred or evidence of such attempt was provided. *Id.* There is an illegible note in the "other" section of the form that appears to contain instructions for filing medical grievances. *Id.* [1]

### III. Discussion

Because Mr. Cole mentioned his HCV treatment in written grievances, the defendant's statement that Mr. Cole did not file "any grievances regarding the treatment of Hepatitis C during his entire time incarcerated at Pendleton Correctional Facility," dkt. 32 at 3, is not well taken. But after evaluating the IDOC documents, it is clear that those grievances were returned because Mr. Cole had not made an informal attempt at resolution and/or provided evidence of such attempts as required under the OGP. And Mr. Cole has not provided any evidence to show that he took any

---

[1] Other IDOC documents reflect grievances where the identity of the issue is not clear. Dkt. 33-2 at 16.

5

follow up action regarding any rejected grievances that pertained to his HCV treatment. He provides no argument that any grievance attempts about this issue were wrongfully or improperly rejected or that he was being thwarted from grieving his issue. Further, there is no evidence that Mr. Cole attempted to file any formal appeals regarding any rejected or accepted formal grievances pertaining to the claims in his complaint.

Mr. Cole does not argue that he was not provided with information or access to a copy of the OGP, was unable to obtain formal grievance forms, or had somehow otherwise been prevented from utilizing the process to grieve his claims before filing this lawsuit.

The designated evidence does not show that Mr. Cole completed the necessary steps to satisfy the grievance process, so there is no issue of material fact regarding exhaustion. Because "a prisoner must take all steps prescribed by the prison's grievance system" to satisfy the PLRA exhaustion of remedies requirement, and Mr. Cole did not do so, this lawsuit should not have been filed and must be dismissed without prejudice. *Ford*, 362 F.3d at 401 (holding that "all dismissals pursuant to § 1997e(a) must be without prejudice.").

### IV. Conclusion

For the reasons explained above, the defendant's motion for summary judgment, dkt. [31] is **granted**, and this action is dismissed without prejudice for failure to exhaust administrative remedies prior to commencement. 42 U.S.C. § 1997e(a).

Final judgment consistent with this Order shall now enter.

**SO ORDERED.**

Date: 5/18/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

6

Distribution:

THOMAS COLE
110 Walnut St.
New Tazewell, TN 37825

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com